UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
FRANK LaPETINA,

              Petitioner,

-against-

SCOTT CARLSEN, Superintendent, Ulster
Correctional Facility,

              Respondent.
-----------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 07-CV-4335 (FB)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 23 2008 ★
BROOKLYN OFFICE

*Appearances:*
*For the Petitioner:*
BRENDAN MICHAEL WHITE, ESQ.
Law Office of Diarmuid White
148 East 78th Street
New York, NY 10021

*For the Respondent:*
JOHN M. CASTELLANO, ESQ.
Queens County District Attorney's Office
125-01 Queens Boulevard
Kew Gardens, NY 11415

**BLOCK, Senior District Judge:**

        Petitioner Frank LaPetina ("LaPetina") seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. LaPetina was convicted of second-degree burglary and sentenced to four years' incarceration. He argues that his due process rights were violated when the state trial court refused to give the jury a justification-defense charge, despite the fact that LaPetina testified in his own defense that he believed his daughter was in danger inside the house he entered. For the reasons set forth below, the petition is denied.

I

        LaPetina's conviction resulted from an incident on September 17, 2002 in which he entered the house of the Persaud family without permission and participated in a physical altercation once inside. LaPetina's account of what happened differs

1

considerably from that presented by the prosecution. According to LaPetina's testimony, he received a telephone call at home regarding his daughter, Justine LaPetina ("Justine"). He drove to the block on which the Persaud family lives, believing on the basis of the call that his daughter was involved in a fight at a house on that block, but not knowing which house. Upon arrival, he saw a crowd of people he did not know on the street. He called out, "Where is my daughter?" and someone in the crowd pointed to the Persaud house. Trial Tr. 866. LaPetina heard a scream from the house and saw a group of people rushing into the house. He followed the people into the house, was attacked immediately upon entering, threw two or three punches in self defense, and then left shortly thereafter.

The state's case, presented largely through the testimony of members of the Persaud family, paints a different picture: After a series of altercations earlier in the day involving Justine and members of the Persaud family, the family was in their house with the door locked. LaPetina kicked in the door and entered with his adult son, Louis LaPetina ("Louis"), who was armed with a baseball bat. LaPetina punched three members of the family, including one who was holding a baby, and threatened to kill some of them. Louis hit two of the Persauds in the head with the baseball bat and choked another member of the family. None of the Persauds struck back at their attackers.

At trial, LaPetina asked for a jury charge explaining the justification defense. The prosecutor interpreted the request as referring to N.Y. Penal Law § 35.15, which sets out a justification defense to the use of force on a person and so would not be relevant to burglary *per se*. Defense counsel did not dispute the prosecutor's choice of statute and did not direct the court's attention to any other statutory provision. The following exchange

2

took place (Mr. Gann was defense counsel and Mr. Schraeter was the prosecutor):

> THE COURT: Well, I can tell you I have a particularly difficult time in saying that a justification charge lies in a situation where somebody enters a home, going into the somebody else's home without permission or authority. The statute in fact militates against it and the entrance itself into the premises puts the actor in a position of acting first, so that there would be no justification in any event. I don't think in this country you can just go into someone's home. You need more than that.
>
> MR. GANN: Well, I don't disagree with that, Judge, but I do believe that there is a reasonable view of the evidence that based upon whether the information that Mr. Lapetina had was hearsay or not I don't believe is relevant to the what he reasonably believed when he arrived at that location. And based on that, I make the argument that he was not only justified, or the jury could find that he was justified in entering the premises, but that, once inside, they could find he was justified in defending himself from what he described as the acts of at least two of the people in that house.
>
> THE COURT: Well, to me it sounds like turning the law upside-down. I would be -- I would be interested to see an appellate court accepting that proposition. I mean the police can't even enter someone's premises unless there is a sound basis in law; exigent circumstances, something like that, a weapon. I don't believe a private citizen can go, otherwise we all ought to put bars up in all our houses --
>
> MR. SCHRAETER: Your Honor.
>
> THE COURT: -- arm ourselves, and there are some people who believe that, but I have a difficult time with that notion, that justification belongs in this case.

Trial Tr. 931-32.

The jury found LaPetina guilty of first-degree burglary, two counts of first-degree assault, and endangering the welfare of a child. On direct appeal, the Appellate Division reduced the first-degree burglary conviction to a conviction of second-degree

3

burglary and vacated the assault convictions. *People v. LaPetina*, 828 N.Y.S.2d 72, 75 (2d Dep't 2006). The Appellate Division rejected, on the merits, LaPetina's argument to the effect that the trial court had erred in failing to charge the jury on the defense of justification. LaPetina appealed to the Court of Appeals, which affirmed the order of the Appellate Division because it found LaPetina's jury charge claim to be procedurally defaulted. *People v. LaPetina*, 9 N.Y.3d 854, 855 (2007). The high court interpreted LaPetina's argument on appeal as invoking N.Y. Penal Law § 35.05, which sets out a justification defense to any conduct other than the use of force, and stated: "This contention is not preserved for review in this Court because defendant failed to alert the trial court that, in addition to the Penal Law § 35.15 self-defense instruction discussed during the charge conference, he was also seeking a 'choice of evils' instruction" under § 35.05. *LaPetina*, 9 N.Y.3d at 855. LaPetina filed the present petition for a writ of *habeas corpus* on October 17, 2007.

## II

LaPetina argues that the state trial court erred when it did not charge the jury on the justification defense and that the error constituted a violation of the federal constitutional guarantee of due process. Respondent counters that the holding of the Court of Appeals that LaPetina failed to preserve his claim raises a procedural bar that prevents this Court from reviewing LaPetina's claim. The Court disagrees; the claim is not procedurally barred. However, because LaPetina was not entitled to a justification charge under state law, there was no state-law error; thus, there was no due process violation.

4

## A. There Is No Procedural Bar to the Court's Review of LaPetina's Claim

A federal court may not grant a writ of *habeas corpus* based on an alleged violation of federal law where the state court's denial of the petitioner's claim rests on an independent and adequate state-law ground, including procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991). A state-law ground can only be adequate to "foreclose review of a federal claim if it is firmly established and regularly followed in the state, [but] even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (citing *Lee v. Kemna*, 534 U.S. 362, 376 (2001)). Whether a state law ground is "adequate" is a question of federal law, *see Lee v. Kemna*, 534 U.S. 362, 375 (2001) (quoting *Douglas v. Alabama*, 380 U.S. 415, 422 (1965)); *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999), and is reviewed *de novo*, *see Monroe v. Kuhlman*, 433 F.3d 236, 240 (2d Cir. 2006) (citing *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003)).

Three factors guide courts in determining the adequacy of the application of state-law grounds in *habeas* cases:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (citing *Lee*, 534 U.S. at 381-85). The factors are not "a 'test' for determining adequacy, [but rather] guideposts in 'evaluat[ing] the state

5

interest in a procedural rule against the circumstances of a particular case.'" *Cotto*, 331 F.3d at 240 (quoting *Lee*, 534 U.S. at 381-85). Indeed, "a petitioner may establish inadequacy even where he has demonstrated that only one of the factors applies." *Fong v. Poole*, 522 F. Supp. 2d 642, 653 (S.D.N.Y. 2007) (citing *Monroe*, 433 F.3d at 245 (finding state law ground inadequate where only second *Cotto* factor weighed in petitioner's favor)). To determine whether the application of the state rule is "exorbitant" in this case, the Court must "look at the statute and case law construing it." *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007).

New York's contemporaneous objection rule requires litigants to object to a court's ruling "at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. . . . In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter . . . regardless of whether any actual protest thereto was registered." N.Y. Crim. Proc. L. § 470.05(2). The purpose of the contemporaneous objection rule is to "fairly apprise the court and the opposing party of the nature and scope of the matter contested, and to allow the necessary evidentiary treatment and trial-level advocacy to be pursued." *People v. Jones*, 440 N.Y.S.2d 248, 261 (2d Dep't 1981).

There is no doubt that the contemporaneous objection rule is "firmly established and regularly followed" in New York. *See Garvey*, 485 F.3d at 718. Furthermore, it is undisputed that the rule is "independent" of the merits of LaPetina's federal claim. The question, then, is whether the rule's application in this case was

adequate — to answer it the Court must apply the *Cotto* factors.

The first factor "is less applicable in this case because the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court." *Cotto*, 331 F.3d at 242. Nevertheless, "perfect compliance" with the contemporaneous objection rule would not have changed the trial judge's decision here, since the record shows that the court considered and rejected the idea that "a justification charge lies in a situation where somebody enters a home, going into somebody else's home without permission or authority." Trial Tr. 931. LaPetina's trial counsel asked for a justification charge on "entering the premises," *id.*; invoking a different statutory provision would not have altered the decision. The trial court did not reject LaPetina's request for a justification charge on the ground that § 35.15 only applies to the use of force on a person, but on the ground that one cannot be justified in entering another's home.

The second *Cotto* factor also weighs in LaPetina's favor. "New York courts have not consistently applied the contemporaneous objection rule to bar appellate review where a party does not repeat his request for a particular jury instruction after he has already requested, and been denied, that instruction." *Fong*, 522 F. Supp. 2d at 654 (citing New York cases); *see People v. Davis*, 608 N.Y.S.2d 348, 350 n. 1 (3d Dep't 1994) (finding that defendant preserved objection to jury charge by requesting that trial court "employ specific language in its charge, which it declined to do"); *People v. Davis*, 580 N.Y.S.2d 339, 339 (1st Dep't 1992) ("[D]efense counsel sufficiently preserved the issue for appeal by timely requesting a charge on the lesser included offense prior to submission of the entire charge to the jury."); *People v. Lewis*, 499 N.Y.S.2d 709, 711 (1st Dep't 1986) (finding defendant's

request for justification charge after jury had begun deliberations preserved issue because it was made "when the court had an opportunity of effectively changing" the charge (quoting N.Y. Crim. Proc. L. § 470.05(2))).

Finally, the third *Cotto* factor weighs in LaPetina's favor. To determine whether LaPetina substantially complied with the state rule, the Court looks "to the asserted state interest behind the contemporaneous objection rule—to ensure that the parties draw the trial court's attention to any potential error while there is still an opportunity to address it." *Cotto*, 331 F.3d at 245. As discussed above, defense counsel asked for a justification charge regarding the entry into the Persaud home and argued the point in response to the court's skepticism, thus drawing the court's attention to the potential error in the jury charge. Since the *Cotto* factors all weigh in favor of finding an inadequate state ground, LaPetina's claim that the trial court erred in refusing to charge the jury on the justification defense is not procedurally barred; it may be reviewed by the Court.

## B. Review of LaPetina's Claim

The standard of review for a court hearing a *habeas corpus* petition depends on whether the state court decision was on the merits; decisions on the merits are reviewed under a highly deferential standard and may be rejected if they were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). "By its terms, § 2254(d) requires such deference only with respect to a state-court 'adjudication on the merits,' not to a disposition 'on a procedural, or other, ground.'" *Miranda v. Bennett*, 322 F.3d 171, 178

(2d Cir. 2003) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001)).

The New York Court of Appeals denied LaPetina relief on procedural grounds, *see LaPetina*, 9 N.Y.3d at 855, but the intermediate appellate court reached the merits of his claim, *see LaPetina*, 828 N.Y.S.2d at 77. The Second Circuit has twice declined to decide whether a district court hearing a *habeas* petition in such a situation ought to decide the claim *de novo* because of the high court's procedural decision or, on the other hand, whether to review the intermediate appellate court's merits determination under the deferential review required by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. 104-132, 110 Stat. 1214 (1996). *See Monroe*, 433 F.3d at 245 (leaving undecided "whether, because the intermediate appellate court reached the merits of Monroe's judicial supervision claim, federal courts review the intermediate appellate court's decision using AEDPA deference, or whether, in light of the state supreme court's erroneous holding as to a procedural bar, we consider Monroe's claim de novo"); *Cotto*, 331 F.3d at 231 (assuming, without deciding, that intermediate court ruling on merits constitutes an adjudication on the merits in state court and analyzing petitioner's claim under deferential AEDPA standard). The Court need not decide the issue in this case, because LaPetina is not entitled to *habeas* relief under either alternative.

If the Court were to decide that the Appellate Division's decision on LaPetina's justification charge claim is an adjudication on the merits and should be reviewed under the AEDPA standard, the petition would be denied. LaPetina does not point to — and the Court has not found — any decision of the United States Supreme Court that holds that a refusal to give a jury charge regarding the defense of justification on facts

even remotely similar to those of this case deprives the defendant of a fair trial. Consequently, the decision of the state court cannot be said to be "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d); *see Carey v. Musladin*, 549 U.S. 70 (2006) (holding that "clearly established Federal law" under § 2254 refers to holdings of the Supreme Court, narrowly construed); *Rodriguez v. Miller*, 537 F.3d 102, 106-07 (2d Cir. 2008) (same).

LaPetina would also not be granted the writ if the Court were to review the jury charge issue *de novo*, because he was not eligible for a justification charge under state law. "What due process requires will often depend on what state law is. . . . [C]ourts have granted *habeas* relief for a failure to charge justification where the evidence supported a justification charged under state law and where the erroneous failure to give such a charge was sufficiently harmful to make the conviction unfair." *Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001) (footnote omitted). The Court must determine the law of New York regarding justification charges. "In determining whether a petitioner was entitled to a defense under state law, federal courts must of course defer to state-court interpretations of the state's laws, so long as those interpretations are themselves constitutional." *Davis v. Strack*, 270 F.3d at 124 n.4 (citing *Clemmons v. Delo*, 177 F.3d 680, 685 (8th Cir. 1999)). Although a justification charge is required whenever "any reasonable view of the evidence would permit the factfinder to conclude that the defendant's conduct was justified," *People v. Petty*, 7 N.Y.3d 277, 284 (2006), two features of New York law make LaPetina ineligible for a justification charge: (1) New York courts do not recognize a justification defense to burglary because of the *mens rea* required for that crime, and (2) the necessity that

motivated the conduct must be actual, as opposed to one the actor merely reasonably believed was present.

First, the absence of a need for a justification charge was explained by the Appellate Division in its decision rejecting LaPetina's claim; it held:

> The jury was required, in order to reach a verdict with respect to the charge of burglary in the first degree, to determine whether the People established, beyond a reasonable doubt, that the defendant entered the Persaud residence with the intent to commit a crime therein. If the defendant had such intent, however, the defendant could not have entered the residence on the basis of his belief that Justine was being held inside and required assistance. A justification instruction in connection with the burglary charge was, therefore unnecessary.

*LaPetina*, 838 N.Y.S.2d at 77; *see also People v. Santiago*, 561 N.Y.S.2d 28, 29 (1st Dep't 1990) ("Defendant, who was convicted of burglary on evidence that he was discovered, armed with a pocket knife, in the bathroom of a residential apartment, argued that he entered the premises to avoid injury from persons who followed him, and that consequently he was entitled to a justification charge. Under the facts as presented by the defense, defendant could not have been 'justified' in entering with the intent to commit a crime since he allegedly did not intend to commit any offense."); *People v. Bess*, 484 N.Y.S.2d 268, 269 (3d Dep't 1985) (reasoning that "defendant either entered or remained in the building intending to commit a crime therein or was lacking that guilty intent."). Under New York law, the intent to commit a crime necessary for a burglary conviction is incompatible with the state of mind necessary for an entry without permission to be justified. Because the jury could not have found LaPetina guilty of burglary without finding that his conduct was *not* justified, there was no need for a jury charge on justification.

Second, caselaw interpreting N.Y. Penal Law § 35.05(2) makes clear that the standard it sets out is objective: "There is no reference in section 35.05(2) to what the actor intends, or believes to be necessary." *People v. Craig*, 78 N.Y.2d 616, 622 (1985). Furthermore, "the language of the statute bears both on the nature of the conduct to be justified and the harm to be avoided. [The imminent injury must be] an impending harm which constitutes a present, immediate threat—i.e., a danger that is actual and at hand . . . ." *Craig*, 78 N.Y.2d at 623-24; *see also People v. Charles*, 527 N.Y.S.2d 504, 504 (2d Dep't 1988) (rejecting justification charge claim where there was no evidence that the danger defendant claimed justified his conduct was actual).

LaPetina testified that he believed his daughter was in danger inside the Persaud home; she was not, in fact, inside the house. Therefore, the danger he sought to prevent was not "actual and at hand." Since Justine was not inside the house, LaPetina's entry was not objectively necessary to prevent her from being harmed. Furthermore, even if reasonable belief were relevant to justification under § 35.05, LaPetina's belief that Justine was in the house does not seem to have been reasonable. LaPetina had been told that Justine was in one of the houses on the Persauds' block, but did not know which one. He asked a crowd of strangers where his daughter was and one of them pointed, but there was no way for anyone in the crowd to have known *who* his daughter was. Based on this information and hearing an unidentified scream, LaPetina formed the belief that Justine was in the Persaud home and entered it. The basis for LaPetina's belief was too weak to make that belief reasonable.

In sum, it was not error under New York law for the trial court to refuse to

12

give a justification charge to the jury. *See Davis v. Strack,* 270 F.3d at 124 n.4 ("[The *habeas* court's] role . . . is not to interpret New York's law of justification, but to determine whether the evidence was sufficient to warrant a justification charge under that law."). LaPetina does not argue, nor is there any reason to suspect, that the law governing justification charges in New York is unconstitutional. Therefore, under *de novo* review, the state court proceedings did not violate the constitutional guarantee of due process.

## CONCLUSION

The petition is denied. A certificate of appealability will not be issued because LaPetina has failed to make a substantial showing of the denial of a federal right. *See* 28 U.S.C. § 2253.

SO ORDERED.

s/FB

FREDERIC BLOCK
United States District Judge

Brooklyn, New York
October 20, 2008

13